NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Bruce CASSIDY, Administrator of the Estate
of William B. ECKEL, deceased,

        Plaintiff,

v.

OHIO CAUSALTY GROUP a/k/a WEST
AMERICAN INSURANCE CO., a/k/a
PEERLESS INSURANCE CO., a/k/a
LIBERTY MUTUAL GROUP,

        Defendant.

Civ. No. 10-2028

OPINION

THOMPSON, U.S.D.J.

## I.   INTRODUCTION

This matter has come before the Court upon the Motion for Summary Judgment [docket # 10] filed by Defendants Ohio Causalty Group, a/k/a West American Insurance Co., a/k/a Peerless Insurance Co. a/k/a Liberty Mutual Group ("Defendants") and upon the Motion for Summary Judgment [docket # 11] filed by Plaintiff Bruce Cassidy, Administrator of the Estate of William B. Eckel, deceased ("Plaintiff").  The Court has decided the motion on consideration of the parties' written submissions, without holding oral argument, pursuant to Fed. R. Civ. P. 78(b).  For the reasons stated below, Defendant's Motion is granted, and Plaintiff's Motion is denied.

## II.   BACKGROUND

This case arises out of a claim for benefits under an automobile insurance policy.  Plaintiff is the administrator of the estate of William B. Eckel, who suffered fatal injuries in a car accident in December 2008.  Eckel was the passenger; the driver was an underinsured

1

motorist named Dana Sanfilppo. After Eckel's death, Plaintiff made a claim for benefits under a policy issued by Defendants to Eckel's grandfather, Frank J. Kohler. Defendants rejected the claim, and Plaintiff initiated this lawsuit claiming breach of contract and seeking a declaratory judgment. The two primary issues are (1) whether Eckel qualifies as an "insured" under the policy issued to Kohler and (2) if so, whether the policy's underinsured motorist coverage covers Eckel for the accident in Sanfilppo's car.

The automobile insurance policy in question ("the Policy") was issued by Defendants to Kohler for a 1993 Ford F150 and a 2002 Ford F150. (Defts.' Statement of Material Undisputed Facts ¶ 1) [10-3]. The Policy was originally issued in 2002 and was renewed annually, including for the year beginning January 22, 2008. (*Id*.) Under the Policy's definitions, an "insured" is defined as "you [Kohler] for any covered 'auto." (John T. Coyne Certification Ex. C, at OC 0013) [10-2] And this definition was amended to include a "family member" of the individual named in the policy who is (1) related "by blood, adoption, marriage, or civil union recognized under New Jersey law" to the named insured, and (2) a resident in the named insured's household. (*Id*. at OC 0043, OC 0050.) It appears undisputed that Eckel was a blood relative of Kohler's. It is less clear, however, that Eckel was a resident in Kohler's household. Plaintiff presents as evidence a letter from the Internal Revenue Service sent to Eckel at Kohler's address a few months before Eckel died. (Pl.'s Mot. for Summ. J. Ex. B, at 1) [11-1]. Defendants point out, though, that the police report from the accident lists a different address for Eckel. (*See* Coyne Certification Ex. B, at 1) [10-2].

The Policy provides an insured with several types of coverage. These are listed in "Item Two" of the Policy and include coverage for liability, uninsured motorist ("UM"), underinsured motorist ("UIM"), and physical damage. (*Id*. Ex. C, at OC 008.) The Policy affords coverage only to events involving "covered autos," and Item Two provides a line under each type of

insurance where a "Covered Auto Symbol" can be listed. (*Id.*) The Covered Auto Symbols provide a shorthand for definitions that are provided separately. Symbol 7 is the most restrictive: it defines "covered auto" to include only those vehicles specifically described in the Policy (*i.e.* the two Ford F150's). (*Id.* at OC 0012). Symbol 1 is the least restrictive: it defines "covered auto" as "any 'auto.'" (*Id.*) For Kohler's Policy, liability insurance is limited to Symbols 7, 8, and 9, and UM and Physical Damage coverage are limited to Symbol 7. However, the key to this case is that there is no Covered Auto Symbol listed under the UIM coverage line. Plaintiff argues that, absent any symbol, the Policy must be interpreted to provide the least restrictive coverage for UIM—that is, Symbol 1 ("any auto") coverage. If Symbol 1 applies, then Eckel would be covered because "any auto" obviously includes Sanfilppo's. Defendants counter that interpreting the contract to meet the parties' reasonable expectations would mean treating UIM coverage like UM coverage—that is, restricted to Symbol 7 autos.

After Defendants rejected Plaintiff's claim for $500,000 in UIM coverage, Plaintiff initiated this lawsuit. Plaintiff seeks a declaratory judgment that Eckel qualifies as an insured and that the accident in Sanfilppo's car is covered under the Policy's UIM coverage. Both parties have now moved for summary judgment.

### III. ANALYSIS

**A. Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." *Id.*; *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). In

resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). More specifically, the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). More than a mere "scintilla of evidence" supporting the non-moving party is required. *Anderson*, 477 U.S. at 252. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Celotex*, 477 U.S. at 323–24.

    **B. Application**

    The two key issues before us are (1) whether Eckel qualifies as an "insured" under the policy issued to Kohler, and (2) if so, whether the policy's UIM coverage applies to the injuries Eckel suffered while he was in Sanfilppo's car. As to the first issue, we note that the evidence of Eckel's residence is disputed, which creates a genuine issue concerning whether he qualifies as an "insured" under the contract by virtue of his relation to Kohler and his residence in Kohler's household. Nevertheless, we will assume without deciding that Eckel qualifies as an insured because, as discussed below, we find that the insured could not have reasonably expected that the UIM coverage would apply to the car accident in Sanfilppo's car. Because there is no genuine issue concerning the reasonable expectations of the insured, we will grant summary judgment to the Defendants.

The interpretation of a contract is ordinarily a determination of law suitable for summary judgment. *Shah v. Geico Ins. Co.*, No. L–50–08, 2011 WL 3444269, at *3 (N.J. Super. Ct. App. Div. Aug. 9, 2011) (citations omitted); *Celanese Ltd. v. Essex Cnty. Improvement Auth.*, 962 A.2d 591, 600 (N.J. Super. Ct. App. Div. 2009) (citations omitted). In interpreting the contract, a court "must try to ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." *Id.* (citing *Onderdonk v. Presbyterian Homes of N.J.*, 425 A.2d 1057, 1063 (1981)). For insurance contracts, the "fundamental rule of interpretation" is the "doctrine of reasonable expectations." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1265 (N.J. 2001). If the terms of the contract are clear, they "are to be given their plain, ordinary meaning." *Id.* But if the terms create ambiguity, "we construe them against the insurer and in favor of the insured to give effect to the insured's reasonable expectations." *Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*, 21 A.3d 1151, 1158 (N.J. 2011) (citing *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (2010)). Under this approach, "courts seek to interpret the ambiguous language of the insurance contract objectively and from the perspective of the average policyholder, as far as the language of the insurance contract will permit." *Morrison v. Am. Int'l Ins. Co. of Am.*, 887 A.2d 166, 170 (N.J. Super. Ct. App. Div. 2005). In resolving the ambiguity, "a court may look to extrinsic evidence as an aid to interpretation." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008) (citation omitted). Lastly, we note that the rights of an additional insured, such as Eckel, are no greater than the rights of the named insured, Kohler. *Allgor v. Travelers Ins. Co.*, 654 A.2d 1375, 1379 (N.J. Super. Ct. App. Div. 1995).

Plaintiff argues that the absence of a coverage symbol creates ambiguity and that the only way to resolve that ambiguity, consistent with the reasonable expectations of Eckel or Kohler or both, is to apply the least restrictive option—Symbol 1, which covers "any auto." To the

5

contrary, we find that, although the absence of a coverage symbol for UIM could create ambiguity, the insured could not reasonably expect that the UIM coverage applied to "any auto." We base our decision on two main reasons. First, in applying for the Policy, Kohler specifically elected Symbol 7 UIM coverage; Symbol 1 was not even an option. Second, in New Jersey, UM and UIM coverage are often bundled, and the most reasonable reading of the Policy is that the UM coverage symbol applied to UIM as well.

### i.    Kohler's Application Election

Kohler originally applied for an insurance policy with Defendants in 2002. (Coyne Certification Ex. D, at 9) [10-2]. On that application, he was given a choice of which coverage symbol he wanted to apply for each type of coverage. For both UIM and UM coverage, Kohler checked the box to select Symbol 7, which covers only the two Ford F150's listed in the Policy. (*Id.*) Notably, for UM and UIM coverage, Symbol 1—which Plaintiff now argues was the reasonable expectation of the insured—was not even an option on the application form. (*Id.*)

Although Kohler's UIM election was not clearly transferred to the UIM line of the Policy's declaration page, the Court may consider the extrinsic evidence of the application in determining the parties' intent and the insured's reasonable expectations. *See Chubb Custom Ins. Co.*, 948 A.2d at 1289. In *Freund v. Universal Underwriters Group Insurance Company*, a New Jersey appellate court used an insured's elections in an application as evidence of the insured's reasonable expectations regarding the amount of UM/UIM coverage, concluding:

> [W]here, as here, the policyholder elected specific coverage in a clear and unambiguous, signed and dated writing made close in time to the date of the declaration pages, the written election will prevail over any ambiguity in the declaration pages, because, in these circumstances, the reasonable expectation of the policyholder is that the coverage is limited by the election.

*Freund*, No. L-08982-08, 2010 WL 4028586, at *3 (N.J. Super. Ct. App. Div. Aug. 17, 2010); *see also Tarasoff v. New Jersey Mfrs. Ins. Co.*, No. L-3317-09, 2011 WL 650534, at *2 (N.J. Super. Ct. App. Div. Feb. 24, 2011) (considering evidence of plaintiff's application election in determining limits of insurance policy's UIM and UM coverage).  We agree with the reasoning in *Freund* and we find that Kohler's choice of Symbol 7 and the unavailability of Symbol 1 coverage strongly demonstrate that the parties intended only the limited coverage and not the expansive coverage Plaintiff now seeks.

Plaintiff argues that *Freund* is inapposite because Kohler's application is not signed and dated and was not made "close in time" to the date of the Policy; instead, it was submitted six years before the current Policy.  (Pl.'s Opp'n Br. 15.)  Although it is true that the application is not signed and dated by Kohler, it appears to have been filled out by an insurance agent on Kohler's behalf.  *See Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F. Supp. 474, 483 (D.N.J. 1995) ("[W]hen a broker/agent evaluates the needs of a prospective insured, makes recommendations, and attempts to obtain coverage, he acts as the agent of the insured.") (citing *Mazur v. Selected Risks Ins. Co.*, 558 A.2d 508, 511 (N.J. Super. Ct. App. Div. 1989)).  Plaintiff has put forward no evidence that would suggest that the elections made in the application were not Kohler's true, intended choices.  As for timing, the 2002 application was indeed submitted six years before the effective date of the relevant 2008 Policy.  However, Kohler's initial policy with Defendants was issued in 2002 and renewed every year up to and including 2008.  There is no evidence that would suggest that Kohler's 2002 elections—made close in time to the original policy—are no longer relevant to his expectations for the 2008 renewal.  *See Tarasoff*, 2011 WL 650534, at *2 (considering application elections made prior to original insurance policy when interpreting later renewal).

7

### ii. Bundling of UM and UIM Coverage

The second reason why it would be unreasonable to expect Symbol 1 to apply to UIM coverage is because UIM and UM coverage are typically bundled, and here, the UM coverage is limited to Symbol 7.

UM and UIM provide very similar coverage: UM protects against the risk of injury by a driver in an uninsured vehicle, and UIM protects against the risk of injury by a driver whose liability insurance is inadequate to cover the full extent of the insured's injuries, *see French v. N.J. Sch. Bd. Ass'n Ins. Grp.*, 694 A.2d 1008, 1009 (1997). Reflecting the similarities, the law governing UIM coverage is found in the same statutory section that governs UM coverage. *See* N.J.S.A. 17:28–1.1. Further, "[t]he standard treatise on New Jersey auto insurance notes that . . . 'the usual practice in New Jersey is to bundle UIM coverage with UM coverage and charge a single premium . . . .'" *New Jersey Mfrs. Ins. Co. v. Town of Kearny*, No. L-2136-04, 2011 WL 867269, 6 (N.J. Super Ct. App. Div. Mar. 15, 2011) (quoting Cynthia M. Craig & Daniel J. Pomeroy, New Jersey Auto Insurance Law § 26:2-2, at 456 (2011 ed.)). And indeed, New Jersey courts interpreting automobile insurance contracts have treated UM and UIM coverage together. *See id.*, 2011 WL 867269, at *2 (finding it undisputed on the record "that the UM and UIM coverage was sold as a package [and] that no additional premium was charged for the UIM coverage"); *Morrison v. Am. Int'l Ins. Co. of Am.*, 887 A.2d 166, 172 (N.J. Super. Ct. App. Div. 2005) (finding limitation clause applied to both UM and UIM coverage even though endorsement was captioned "Uninsured Motorists" and section containing limitation clause mentioned uninsured motorists only).

"Although not a canon of construction, courts frequently look to how other courts have interpreted the same or similar language in standardized contracts to determine what the parties intended[.]" *Chubb Custom Ins. Co*., 948 A.2d at 1290. Therefore, we can consider the typical

8

bundling of UM and UIM coverage as a guide to the parties' intentions and the insured's reasonable expectations here. And in the Policy, it appears that the parties intended to treat the two coverages together. The terms of UM and UIM coverage are contained in the same endorsement to the Policy, and that section generally treats the two types of coverage similarly. (Coyne Certification Ex. C, at OC 0038). In Item Two of the Policy, UIM coverage is listed directly below UM coverage. (*Id*. at OC 008.) The premium for UM coverage is listed as $326.00, and the premium for UIM coverage is listed as "Included." (*Id*.) Plaintiff is correct that the Policy does not state what other premium the UIM premium is included under. But in light of the similarity of UM and UIM coverage and the New Jersey cases evaluating them together, the reasonable reading of the Policy is that UIM coverage in included in the UM premium, and a reasonable insured would thus expect the Symbol 7 for UM coverage to apply to UIM coverage as well. Again, this conclusion is strengthened by Kohler's application election of Symbol 7 for both UM and UIM coverage.

## IV. CONCLUSION

For the reasons stated above, we find that the insured could not have held a reasonable expectation that Symbol 1 coverage would apply to UIM coverage. Instead, the best reading of the Policy, based on Kohler's application elections and the typical bundling of UM and UIM coverage, is that Symbol 7 applied to UIM coverage. Therefore, Eckel was not protected by the UIM coverage for the injuries he suffered while riding in Sanfilppo's car. Accordingly, we will grant summary judgment in favor of the Defendants. An appropriate order will follow this opinion.

DATE: August 29, 2011                             */s/ Anne E. Thompson*
                                                                ANNE E. THOMPSON, U.S.D.J.